**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

FATUMATA DIAKITE, et al.,

               *Plaintiffs,*

    v.

MOLLIE ISAACSON, et al.,

               *Defendants.*

CIVIL ACTION
NO. 26-898

**Pappert, J.**                                 **July 29, 2026**

<u>**MEMORANDUM**</u>

Fatumata Diakite, Abdul Hamid, Sharrigay Lilly, Hakeem Gordon, Shanoon Abanto La Torre and Katty Farfan Sanchez sued Mollie Isaacson (former Director of Newark, New Jersey's Asylum Office), Joseph Edlow (Director of U.S. Citizenship and Immigration Services) and Kristi Noem (former Secretary of Department of Homeland Security), alleging they unlawfully failed to consider their affirmative-asylum applications. The defendants move to dismiss on the grounds that the Court lacks jurisdiction, and the Court grants their motion.

I

A

The Immigration and Nationality Act and its implementing regulations establish procedures for aliens seeking asylum. An alien is a person who is not a citizen or national of the United States. 8 U.S.C. § 1101(a)(3). The Attorney General may remove aliens who unlawfully enter or remain in the United States. *Id.* § 1227. But the Secretary of Homeland Security or the Attorney General may grant asylum to an alien if he qualifies as a refugee. *Id.* § 1158(b)(1)(A). Asylum is a status that entitles a

1

refugee to live and work in the United States. *Mullin v. Al Otro Lado*, 146 S. Ct. 2079, 2088 (2026). And a refugee includes a person who is unable or unwilling to return to his country because of persecution or a well-grounded fear of persecution on account of race, religion, nationality, membership in a particular social group or political opinion. 8 U.S.C. § 1101(a)(42)(A).

An alien may apply for asylum in one of three ways. *O.A. v. Trump*, 404 F. Supp. 3d 109, 121 (D.D.C. 2019). An alien may affirmatively apply within one year of arriving in the United States by filing a form with U.S. Citizenship and Immigration Services (USCIS)—a component of the Department of Homeland Security. 8 U.S.C. § 1158(a)(1); 8 C.F.R. §§ 208.2, 208.3, 208.9; *see* Deborah E. Anker & Jeffrey S. Chase, *The Law of Asylum in the United States* 29, 993–95 (2025) (explaining the affirmative-asylum process). After an alien applies for asylum, a USCIS officer conducts a non-adversarial interview to gather relevant information. 8 C.F.R. § 208.9(b). If an alien qualifies as a refugee, the officer may grant asylum. *Id.* § 208.14(b). If the officer does not grant asylum and the alien is inadmissible under 8 U.S.C. § 1182—which bars entry to aliens who, among other things, seek admission by fraud or do not possess valid entry documents—the officer must refer the application to an immigration judge for adjudication during a removal proceeding. *Id.* § 208.14(c).

An alien may also seek asylum defensively after a removal proceeding begins. *Urias-Orellana v. Bondi*, 146 S. Ct. 845, 848 (2026); *see* Anker & Chase, *supra*, at 30 (explaining the defensive-asylum process). The Department of Homeland Security may initiate removal proceedings against an alien living in the United States without authorization by sending him a notice to appear. 8 U.S.C. § 1229(a)(1). The notice

informs the alien of the charges against him and the time and place of the formal hearing at which an immigration judge determines whether the alien should be removed. *Id.* §§ 1229(a)(1)(D), (G)(i); *Campos-Chaves v. Garland*, 144 S. Ct. 1637, 1643–44 (2024). The alien may defend against removal by seeking asylum, 8 U.S.C. § 1229a(c)(4); *Urias-Orellana*, 146 S. Ct. at 848, and may appeal the immigration judge's decision to the Board of Immigration Appeals, 8 C.F.R. §§ 1003.1(b), 1003.38(a). After exhausting these administrative procedures, the alien may petition for review in the appropriate federal court of appeals. 8 U.S.C. § 1252(a)(5).

Finally, an alien may indicate his intent to apply for asylum during inspection. An alien cannot lawfully enter the United States without first being inspected by an immigration officer. *Mullin*, 146 S. Ct. at 2087. During inspection, an immigration officer decides whether the alien is admissible under 8 U.S.C. § 1182, which (again) bars entry to aliens who, among other things, seek entry by fraud or do not possess valid entry documents. 8 U.S.C. § 1182; *Mullin*, 146 S. Ct. at 2087. If the officer determines the alien is inadmissible under 8 U.S.C. §§ 1182(a)(6)(C), (a)(7), he must generally "order the alien removed from the United States without further hearing or review," 8 U.S.C. § 1225(b)(1)(A)(i), a process called expedited removal, *Mullin*, 146 S. Ct. at 2087; Anker & Chase, *supra*, at 1037 (explaining the expedited-removal process). But if the alien "indicates either an intention to apply for asylum" or "a fear of persecution," the immigration officer "shall refer the alien for an interview by an asylum officer." 8 U.S.C. §§ 1225(b)(1)(A)(i)–(ii). The asylum officer must determine whether the applicant has a "credible fear of persecution." *Id.* § 1225(b)(1)(B)(v). (The Secretary may parole an alien into the United States while he awaits his credible-fear

interview. *Id.* § 1182(d)(5); 8 C.F.R. § 235.3(b)(4)(ii).) If the asylum officer finds an applicant has a credible fear, the applicant will receive "full consideration" of his asylum claim in a removal hearing. 8 C.F.R. § 208.30(f); Anker & Chase, *supra*, at 1037. If the asylum officer finds that the applicant does not have a credible fear, a supervisor will review the officer's determination. 8 C.F.R. § 208.30(e)(8). If the supervisor agrees with the asylum officer's determination, the applicant may appeal to an immigration judge, who "shall make a de novo determination." *Id.* §§ 1003.42(c), (d)(1); *Dep't of Homeland Sec. v. Thuraissigiam*, 140 S. Ct. 1959, 1965 (2020).

B

Between 2021 and 2024, Fatumata Diakite, Abdul Hamid, Sharrigay Lilly, Hakeem Gordon, Shanoon Abanto La Torre and Katty Farfan Sanchez—all of whom are aliens—entered the United States illegally.[1] Immigration officers detained them at the border or a port of entry and during inspection determined they were inadmissible under 8 U.S.C. §§ 1182(a)(6)(C), (a)(7) because they did not have valid entry documents or had sought admission into the United States by fraud. (Pls.' Pls.' Mem. of L. in Supp. of Opp'n at 6, Dkt. No. 9.) The plaintiffs indicated their intention to apply for asylum or fear of persecution. Immigration officers gave them a notice, explaining they were inadmissible under 8 U.S.C. §§ 1182(a)(6)(C), (a)(7) and therefore subject to expedited removal under 8 U.S.C. § 1225(b)(1), and a form, explaining the credible-fear interview. The Department of Homeland Security then paroled or released the plaintiffs into the United States. The plaintiffs have not yet received the dates and times of their credible-fear interviews. After their parole or release, the plaintiffs filed

---

[1]     The facts derive from the plaintiffs' complaint, (Compl., Dkt. No. 1), the exhibits attached to the Government's memorandum, (Exs. A–E, Dkt. No. 8-1–8-5), and the plaintiffs' response brief.

4

affirmative applications for asylum.  USCIS told the plaintiffs it could not process their applications because they were subject to expedited removal.  The plaintiffs, USCIS explained, had to pursue asylum through the credible-fear process.

The plaintiffs sued Isaacson, Edlow and Noem, seeking (among other things) a writ of mandamus directing the defendants to consider their affirmative-asylum applications.  The defendants counter that Congress has stripped federal courts of jurisdiction to adjudicate the plaintiffs' claims.  Fed. R. Civ. P. 12(b)(1).  Rule 12(b)(1) permits a court to dismiss a complaint for lack of subject-matter jurisdiction.  *Id.*  The defendants challenge jurisdiction on factual grounds, meaning the Court may consider evidence, not just the plaintiffs' complaint.  *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016).

## II

Section 1252 of Title 8 provides that "no court shall have jurisdiction to review" "a decision by the Attorney General to invoke the provisions of [§ 1225(b)(1)]" of Title 8 or "the application of such section to individual aliens."  8 U.S.C. §§ 1252(a)(2)(A)(ii), (iii).  Section 1225(b)(1), again, governs expedited removal.

After the plaintiffs illegally entered the United States, immigration officers determined they were inadmissible under 8 U.S.C. §§ 1182(a)(6)(C), (a)(7) and issued them a notice stating they were subject to expedited removal under 8 U.S.C. § 1225(b)(1).  The plaintiffs do not dispute this.  *See* (Pls.' Mem. of L. in Supp. of Opp'n at 5) (explaining the plaintiffs "were subject to expedited removal proceedings under 8 U.S.C. § 1[2]25 at the time of their arrival in the United States"); (*id.* at 6) (immigration officers "initiated expedited removal proceedings" against the plaintiffs because they

were "inadmissible to the United States under either 8 U.S.C. § 1182(a)(6)(C) or (a)(7)"). The plaintiffs indicated their intention to apply for asylum or fear of persecution, so they must seek asylum through the credible-fear process. 8 U.S.C. § 1225(b)(1)(A) (requiring an immigration officer to refer the alien for a credible-fear interview if the alien is inadmissible under 8 U.S.C. §§ 1182(a)(6)(C), (a)(7) and indicates an intention to apply for asylum).

The plaintiffs now seek to require the defendants to process their affirmative-asylum applications, which the plaintiffs filed after their parole or release into the United States. But an alien subject to expedited removal cannot seek asylum by affirmatively filing an application. Anker & Chase, *supra*, at 994 (explaining that "noncitizens who are subject to expedited removal proceedings . . . are ineligible to affirmatively apply for asylum"). Rather, they must pursue asylum through the credible-fear process. 8 U.S.C. § 1225(b)(1)(A). Thus, if the Court ordered the defendants to consider the plaintiffs' affirmative-asylum applications, the Court would have to determine that the plaintiffs are not in fact subject to expedited removal under 8 U.S.C. § 1225(b)(1). The plaintiffs' suit plainly requires the Court to review (1) a decision by the Attorney General to invoke expedited removal under 8 U.S.C. § 1225(b)(1) and (2) the application of that section to individual aliens. *See S.W. Noem*, No. 25-cv-9264, 2025 WL 3754067, at *4–6 (S.D.N.Y. Dec. 29, 2025).

The plaintiffs do not challenge the "decision[s]" placing them in "expedited removal." (Pls.' Mem. of L. in Supp. of Opp'n at 14.) Rather, they argue, they seek to "enforce" their right to file affirmative-asylum applications. (*Id.* at 15.) But again, the plaintiffs do not have such a right. Anker & Chase, *supra*, at 994 (explaining that

6

"noncitizens who are subject to expedited removal proceedings . . . are ineligible to affirmatively apply for asylum"); *S.W.*, 2025 WL 3754067, at *5 ("The procedure for an alien who is subject to expedited removal to claim asylum is enumerated in the statute and does not include the filing of an affirmative asylum application."). As explained, the plaintiffs are subject to expedited removal, and therefore, must pursue asylum through the credible-fear process. If the Court ordered the defendants to process the plaintiffs' affirmative-asylum applications, it would need to review the Government's decision to invoke, and apply, expedited removal to the plaintiffs.

The plaintiffs also argue that they are no longer subject to expedited removal because they were paroled or released into the United States and then filed affirmative-asylum applications. But they cite nothing to support this argument.

They next contend that they are in "procedural limbo" because USCIS has not yet scheduled their credible-fear interviews. (Pls.' Mem. of L. in Supp. of Opp'n at 14.) But the Government represents that it informed plaintiffs' counsel that "USCIS could schedule credible fear interviews in short order," plaintiffs' counsel rejected the offer and USCIS agreed to not schedule the plaintiffs' interviews during this litigation. (Defs.' Reply in Supp. of Mot. to Dismiss at 1 n.1, Dkt. No. 10.)

Finally, the plaintiffs argue that forcing them to undergo the credible-fear process would "deprive" them "of their statutory right to consideration of their asylum applications and the possibility of approval before the initiation of expedited removal proceedings." (Pls.' Mem. of L. in Supp. of Opp'n at 14.) Again, the plaintiffs do not have a right to file affirmative-asylum applications. More to the point, the plaintiffs seek to re-write the asylum procedures designed by the political branches of the federal

7

government.  Because the plaintiffs illegally entered the United States without valid entry documents or sought admission by fraud and indicated their intention to apply for asylum, they must seek asylum through the credible-fear process.

An appropriate Order follows.

BY THE COURT:

*/s/ Gerald J. Pappert*

Gerald J. Pappert, J.